

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

DMP/CRH/AAS:ICR/SKW/EHS  *271 Cadman Plaza East*
F. #2022R00326  *Brooklyn, New York 11201*

April 14, 2022

<u>By E-Mail and ECF</u>

The Honorable Roanne L. Mann
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Frank James
              <u>Magistrate Docket No. 22-429</u>

Dear Judge Mann:

      The defendant Frank James is scheduled to be presented before Your Honor later today on the above-referenced complaint which charges him with committing a terrorist attack or other violence against a mass transportation system, in violation of Title 18, United States Code, Sections 1992(a)(7) and (b)(1).  For the reasons set forth below, the government respectfully submits that the Court should enter a permanent order of detention pending trial because the defendant presents a severe and ongoing danger to the community and a serious risk of flight.

I.      <u>The Offense Conduct</u>[1]

      On April 12, 2022, at approximately 8:26 a.m., the defendant set off a smoke emitting device on a crowded N subway train and then shot multiple passengers during New York City's rush hour morning commute.  Preliminary reports indicate that 10 riders were struck by the defendant's gunfire, and approximately 20 others suffered injuries, such as smoke inhalation, resulting from the defendant's unprovoked attack.

      The defendant's attack was entirely premediated.  The day before the shooting, the defendant picked up a U-Haul in Philadelphia, Pennsylvania, which he drove over the Verrazzano-Narrows Bridge and into Brooklyn in the early morning hours of April 12.  The defendant came to Brooklyn prepared with all of the weapons and tools he needed to carry

---

[1] The relevant facts, as they pertain to the defendant's pretrial detention, are proffered herein.  See <u>United States v. LaFontaine</u>, 210 F.3d 125, 130-31 (2d Cir. 2000) (holding that the government is entitled to proceed by proffer in detention hearings).

out the mass attack: a Glock 17 pistol that the defendant had purchased, a container containing gasoline, a torch, and fireworks with explosive powder. All were later found on the platform at the 36th Street and 4th Avenue subway station. The defendant also came prepared with a disguise that he wore during the attack and discarded in the chaos that followed. The defendant entered the subway station wearing a yellow hard hat and an orange working jacket with reflective tape. Immediately after carrying out the attack, the defendant discarded his uniform in order to flee the subway station undetected.

In addition to what the defendant armed himself with on April 12, law enforcement officers recovered a stockpile of weapons and ammunition from other locations controlled by the defendant. For example, law enforcement officers recovered an empty magazine for a Glock handgun, a taser, a high-capacity rifle magazine, and a blue smoke cannister in the apartment that the defendant stayed in recently, before traveling to Brooklyn to commit the attack. Law enforcement officers recovered a propane tank from the defendant's U-Haul truck. Law enforcement officers also recovered from the defendant's storage unit 9mm ammunition, a threaded 9mm pistol barrel that allows for a silencer or suppresser to be attached, targets, and .223 caliber ammunition, which is used with an AR-15 semi-automatic rifle.

II.     The Defendant's Criminal History

Before committing this offense, the defendant had been arrested nearly a dozen times in at least two states over nearly 30 years for a variety of mostly low-level crimes. Among other crimes, the defendant was convicted of reckless endangerment, trespassing, larceny, criminal tampering, and disorderly conduct. Individually these offenses could be seen as unremarkable, but taken together they paint a picture of a person with a penchant for defying authority and who is unwilling to conform his conduct to the law.

III.    Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141 et seq., federal courts are required to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. See 18 U.S.C. § 3142(e) (a judicial officer "shall" order detention if "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). A finding of dangerousness must be supported by clear and convincing evidence. See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985). A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); Chimurenga, 760 F.2d at 405.

The Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be

posed by the defendant's release.  See 18 U.S.C. § 3142(g).  As discussed below, these factors weigh heavily against pretrial release.

For certain offenses, including the offense charged in the Complaint, the law presumes that there is no set of conditions that will reasonably assure the defendant's appearance or the safety of the community.  See 18 U.S.C. § 3142(e)(3)(C) (applying a rebuttable presumption of detention for "an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed.").  Section 1992, the offense with which James is charged, is listed in Section 2332b(g)(5)(B) and carries a maximum term of life, thus triggering the presumption of detention.

This presumption may be rebutted by the defendant, provided the defendant is able to present evidence that he is neither a danger nor a risk of flight.  See United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001).  Even upon such a showing, however, the presumption in favor of detention "does not disappear entirely, but remains a factor to be considered among those weighed[,]" id., because it "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial" and "represents Congressional findings that certain offenders . . . are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions."  United States v. Stone, 608 F3d 939, 945-946 (6th Cir. 2010) (internal quotation marks and citation omitted) (ellipsis in original).

Evidentiary rules do not apply at detention hearings and the government is entitled to present evidence by way of proffer, among other means.  See 18 U.S.C. § 3142(f)(2); see also LaFontaine, 210 F.3d at 130-31.  In the pre-trial context, few detention hearings involve live testimony or cross-examination.  Most proceed on proffer.  Id. at 131.  This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery."  Id. (internal quotation marks omitted); see also Mercedes, 254 F.3d at 437 (We find the district court committed clear error in failing to credit the government's proffer with respect to [the defendant's] dangerousness.").

IV.     The Court Should Enter a Permanent Order of Detention

All the factors to be considered in the detention analysis show that the defendant presents both a severe and ongoing danger to the community and a serious risk of flight if released on bond. In this case, the law presumes that there is no set of conditions that will reasonably assure the defendant's appearance or the safety of the community, a presumption which is confirmed by consideration of all the factors, and because the defendant cannot rebut that presumption, the Court should enter a permanent order of detention pending trial.

A.      The Law Presumes that the Defendant Should Be Detained Pending Trial

The defendant is charged with an offense that triggers a presumption of detention. Specifically, the facts detailed in the complaint establish probable cause to believe that the defendant has committed a violation of 18 U.S.C. §§ 1992(a)(7) and (b)(1), an offense which is listed in 18 U.S.C. § 2332b(g)(5)(B), and for which the maximum authorized term of imprisonment is life. Thus, in this case, the law presumes that there is no condition or combination of conditions of release that will reasonably assure the safety of the community or the defendant's appearance as required. See 18 U.S.C. § 3142(e)(3)(C).

B.      The Statutory Factors Heavily Weigh In Favor of Detention

1. The Nature and Circumstances of the Offense Charged

The defendant's criminal conduct was extraordinarily serious. The victims who boarded the defendant's subway car on the morning of April 12 could not have predicted the horror that would await them on their morning commute. The defendant used a smoke bomb and firearm to conduct a premeditated violent attack on unsuspecting commuters trapped underground with their assailant in a subway car. He fired approximately 33 rounds in cold blood at terrified passengers who had nowhere to run and nowhere to hide. At least ten individuals were struck by the defendant's gunfire, while many more were injured in the chaos that followed his attack. Numerous passengers could have been killed.

The statute that the defendant is charged with violating—committing a terrorist attack or other violence against a mass transportation system—also reflects the seriousness of his conduct.

So serious is the defendant's offense that he faces a sentence of up to life in prison. See 18 U.S.C. § 1992(b)(1) ("Whoever commits an offense under subsection (a) of this section in a circumstance in which . . . [the] mass transportation vehicle was carrying a passenger or employee at the time of the offense . . . shall be fined under this title or imprisoned for any term of years or life."). The government preliminarily, and conservatively, estimates that, pursuant to the United States Sentencing Guidelines, the defendant faces a Guidelines sentencing range of 210 to 262 months' imprisonment. See U.S.S.G. § 2A2.1 (attempted murder). The investigation into the defendant's crimes,

including his motives and intent, is ongoing, and depending on the results of that investigation, certain Sentencing Guidelines sentencing enhancements may apply which may result in a Guidelines sentence of life imprisonment.  See, e.g., U.S.S.G. §§ 3A1.1 (hate crime motivation or vulnerable victim enhancement) 3A1.2 (terrorism enhancement).

      2.   The Weight of the Evidence

The weight of the evidence in this case is strong.  Video footage shows the defendant driving to New York on the morning of the shooting in a van that he rented in his own name and driving that same van to the vicinity of a New York City Transit N-train subway station.  Video surveillance also shows the defendant walking towards the subway station wearing a yellow hard hat and an orange jacket with reflective tape.  The defendant is wearing the same clothing that victims of his mass shooting described the attacker as wearing.  The defendant subsequently is captured on surveillance cameras exiting the subway station at 25th Street soon after the attack, having discarded his hard hat and reflective jacket.  The gun found at the scene of the shooting was purchased by the defendant, and his bank cards and cell phone were found in the 36th Street subway station in a bag near the scene of the shooting.

Before he conducted his attack, the defendant posted videos online in which he criticized the New York subway system and discussed killing people, including with a gun.  Moreover, as discussed below, law enforcement officers located ammunition for multiple firearms, as well as other weapons and tools for conducting an attack, in properties rented by the defendant.

      3.   The Defendant's History and Characteristics

The defendant's history and characteristics further show that he is a danger to the community.  As an initial matter, the investigation revealed that the defendant had a stockpile of weapons and other dangerous items stored in various locations that he controls.  Someone with significant access to weapons, who has proven he is willing to use those weapons, presents a serious and ongoing danger to the community.  In addition, the defendant has a history of recording and posting violent videos on his social media accounts.  For example, the defendant posted a video on his YouTube channel in which he instructed others how to make a Molotov cocktail, a homemade incendiary device often used in violent attacks.  The defendant also posted a video in which he stated a desire to kill and shoot people.

      4.   The Danger to the Community and Risk of Flight

The defendant poses a severe and ongoing risk to the community, which necessitates detention.  The defendant's calculated attack on one of the busiest mass transportation systems in the world during peak commuting hours demonstrates that he is a direct danger to this community.  The defendant's social media posts, in which he discusses a desire to shoot people, further shows that the defendant intended to inflict grave harm.  And

5

the defendant's stockpile of ammunition and other dangerous items stored in various locations demonstrates that he may have additional means to carry out future attacks should he be released.

The defendant is also a flight risk. He has no permanent address, appears to live or have lived recently in multiple states, and has no long-term ties to New York City. The defendant also took steps to avoid capture: He wore a disguise when committing the subway attack and then fled the scene, leaving his cell phone and other identifying documents behind. In addition, as discussed above, the defendant faces up to a term of life imprisonment. Since the prospect of a lengthy term of incarceration may reasonably incentivize the defendant to flee, the defendant's potential sentence demonstrates that he is a serious risk of flight. United States v. Dodge, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (finding possibility of a "severe sentence" heightens the risk of flight).

IV.     Conclusion

The defendant committed a premediated mass shooting on the New York City subway system and then fled the scene, with a stockpile of ammunition and other dangerous items stowed in his storage unit. The defendant presents a severe and ongoing danger to the community, as well as a serious risk of flight, that no set of release conditions can mitigate.

For these reasons, including the legal presumption that there is no set of conditions that will reasonably assure the defendant's appearance or the safety of the community, the government respectfully submits that the Court should enter a permanent order of detention pending trial.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     /s/ Sara K. Winik
       Ian C. Richardson
       Sara K. Winik
       Ellen H. Sise
       Assistant U.S. Attorneys
       (718) 254-7000

cc:     Clerk of Court (RLM) (by ECF)
       Ms. Mia Eisner-Grynberg, Esq. (Counsel for the defendant) (by ECF)